UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

WYNETTE CATRICE MCCLELLAND,

    Plaintiff,

    v.                                         Case No. 20-cv-0366-bhl

LATORIA ARMSTRONG, et al.

    Defendants.

## DECISION AND ORDER

Plaintiff Wynette Catrice McClelland, who is serving a state prison sentence at the Robert E. Ellsworth Correctional Center, filed this action under 42 U.S.C. §1983. McClelland initiated the action pro se, but on September 4, 2020, the Court recruited Attorney Briane F. Pagel to represent her on a volunteer basis. The Court thanks Mr. Pagel for his service to McClelland and the Court. McClelland is proceeding on claims that the conditions of her confinement at the Milwaukee County Jail violated the Fourteenth Amendment and that she was denied the right to freely exercise her religion in violation of the First Amendment. On June 1, 2022, Defendants moved for summary judgment on the ground that McClelland failed to exhaust the available administrative remedies before initiating his lawsuit and on the merits. Dkt. No. 71. The Court will grant Defendants' motion and dismiss this case.

### BACKGROUND

On March 5, 2016, McClelland was booked into the Milwaukee County Jail. Because McClelland was a material witness in a homicide case, she was housed in the jail's Special Needs Unit (SNU) in order to keep her separate from other inmates who were housed throughout the jail

and potentially posed a threat to her safety. The SNU is generally used to house inmates with moderate to severe mental health needs. McClelland was not a typical SNU occupant; under normal circumstances she would have been housed in the general population housing unit. McClelland was in the SNU for just over five months, until August 18, 2016, when she was moved to an open cell in Pod 4A, an influx pod where general population and protective custody inmates are housed. Dkt. No. 106 at ¶¶36, 39, 41, 44-45, 51, 56-57, 72, 128, 251.

According to McClelland, her two SNU cells were "filthy" and "nasty." Both had food and feces caked on the walls and urine on the floor. McClelland asserts that her Pod 4A cell had "food and stuff" on the walls, but no feces. McClelland explains that, despite multiple requests, the cells were never adequately cleaned. She also states that, while in the SNU, her requests for writing materials were denied, she was not permitted to order canteen items, and she was denied eating utensils. Finally, McClelland asserts that she was not allowed to attend Bible studies, her requests for devotional materials were denied, and she was not allowed to have a Bible in her cell. Dkt. No. 105 at ¶¶17, 24-26, 30, 33, 36, 38-40.

Defendants dispute McClelland's assertions, but they also highlight that she failed to raise her concerns through the jail grievance process. According to Defendants, despite the availability of administrative remedies, McClelland failed to submit a grievance about any of her current complaints, including her placement in SNU and Pod 4A, the alleged lack of access to writing materials and eating utensils, the conditions of her cells, her inability to order canteen items while in the SNU, or the denial of a Bible and religious materials and participation in Bible studies. Defendants acknowledge that McClelland filed some grievances, but her filings related only to her concerns about recreation time and a delay in receiving canteen items *after* she moved to Pod 4A,

2

and, as to those complaints, Defendants contend McClelland failed to appeal the responses to those grievances as required by the jail's grievance procedure. Dkt. No. 106 at ¶¶260-68.

McClelland asserts that she did not file grievances because she was unaware of the grievance procedures until after she moved from the SNU to Pod 4A. She also explains that she did not have sufficient time to prepare a grievance during the limited time she was allowed out of her cell, and she was afraid that officers would retaliate against her if she filed a grievance. McClelland also asserts that she did not receive any responses to the few grievances she did file, so she could not appeal those decisions.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). In response to a properly supported motion for summary judgment, the party opposing the motion must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

3

## ANALYSIS

The Prison Litigation Reform Act (PLRA) applies to this case because McClelland was a prisoner when she filed her complaint. The PLRA provides that a prisoner cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(1). According to the U.S. Supreme Court, exhaustion of administrative remedies must be done "properly" because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). To properly exhaust administrative remedies, prisoners must pursue each step in the administrative process. *See Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) (when a prisoner does not follow procedures his remedies are forfeited, not unavailable).

The grievance procedure at the jail requires inmates to complete a written grievance form and to place the form in the grievance box or hand the form to an officer. A lieutenant then reviews and answers the grievance. An inmate who is dissatisfied with the result can appeal the decision in writing to the captain, who reviews and rules on the appeal. If an inmate is still dissatisfied, she can make one final appeal to the jail commander. The decision of the jail commander is final. Dkt. No. 72 at 18-19 (citing Dkt. No. 88-1).

Exhaustion is an affirmative defense, so it is Defendants' burden to prove that the administrative remedies were available. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). The Seventh Circuit has explained that an administrative process may be unavailable when prison officials provide inmates with erroneous information or otherwise use affirmative misconduct to prevent a prisoner from exhausting. *Id.*; *Kaba*, 458 F.3d at 684. Whether an inmate exhausted the available administrative remedies is an issue for the Court, not a jury, to decide. *Pavey v. Conley*, 544 F.3d 739, 741 (7th Cir. 2008).

4

Defendants assert that McClelland failed to exhaust the available administrative remedies because she did not file grievances about many of the conditions that give rise to her claims, including the cleanliness of her cells, the lack of writing materials and eating utensils, or her inability to freely exercise her religion. Dkt. No. 106 at ¶¶260-65. According to Defendants, the only grievances she filed related to a brief delay in her receiving canteen items after she moved from the SNU to Pod 4A, deductions from her account for dental services she never received, and her occasionally receiving less recreation time in Pod 4A than she believed she was entitled to. Dkt. No. 88-2; Dkt. No. 106 at ¶¶267. Defendants note that McClelland did not appeal the decisions on the few grievances she filed. Dkt. No. 106 at ¶268.

While McClelland concedes that she did not file grievances while she was housed in the SNU or grievances about the conditions of her cells, her access to a Bible and other religious materials, or her access to eating utensils, *see* Dkt. 91-7 at 23:1-10, 31:17-22, 97:24-98:1, 114:23-25, 136:12-14, she asserts that she was prevented from doing so because the administrative remedies were unavailable to her. The Court will address each of McClelland's arguments in turn.

**1. McClelland's Assertion that the Administrative Remedies Were Unavailable Because the Jail Did Not Inform Her of the Grievance Process Is Without Merit.**

McClelland first asserts that Defendants did not tell her about the grievance procedures until after she moved from the SNU to Pod 4A. The record, on the other hand, demonstrates that the jail made this information available to McClelland when she was booked into the jail and every day thereafter. Defendants explain that the inmate handbook, which explains the grievance process, was available to every inmate upon booking. Dkt. No. 106 at ¶256. Further, the grievance process was explained in detail in a video that played on a continuous loop in the booking room. *Id*. at ¶255. And finally, each housing unit, including the SNU, had copies of the inmate handbook posted on the walls of the unit. *Id.*

Against these very specific factual assertions, McClelland offers only unsupported general assertions that the jail intentionally kept her in the dark about the grievance procedures. Such conclusory assertions do not suffice to create a disputed issue of material fact. *See Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir. 1983) ("To create a question of fact, an adverse party responding to a properly made and supported summary judgment motion must set forth specific facts showing that there is a genuine issue for trial. A party may not rest on mere allegations or denials of his pleadings; similarly, a bare contention that an issue of fact exists is insufficient to raise a factual issue." (citations omitted)). While McClelland may not have read the handbook, paid attention to the video, or consulted the postings on the walls of her unit, she has not presented any evidence suggesting that the jail made efforts to keep that information from her. Indeed, contrary to McClelland's assertions, the evidence shows that the jail went to great lengths to educate all inmates, including McClelland, on the administrative remedies available to them.

Moreover, the record shows McClelland did in fact know about the grievance procedure before moving to Pod 4A. Defendants present evidence that McClelland referenced filing a grievance while on a call with her family on March 12, 2016, establishing that she was familiar with the procedures *within a week of entering the jail*. *Id.* at ¶277. McClelland does not explain how she could have informed family of her intention to file a grievance if she did not know doing so was possible.

Finally, even if McClelland did not learn about the grievance process until after she moved to Pod 4A, she offers no explanation of why she did not file grievances about the conditions of her cell, the denial of a Bible and religious materials, or the denial of eating utensils after she learned about the procedures. In short, McClelland has not created a triable issue on whether the

6

administrative remedies were unavailable to her because the jail did not inform her of the procedures.

**2. McClelland's Assertion that the Administrative Remedies Were Unavailable Because She Did Not Have Adequate Time to Prepare a Grievance Is Without Merit.**

McClelland next asserts that she did not have adequate time to prepare a grievance while she was housed in the SNU. She explains that she was allowed out of her cell for only one to two hours per day and that was the only time she could take a shower, read the Bible, or talk to her friends and family. This argument falls flat. The grievance form is not complicated. It is a one-page form that asks for the inmate's name, number, and the date and time of the incident. It has about twenty blank lines for an inmate to briefly describe the issue. Moreover, even the few grievances McClelland actually filed while she was at the jail, make clear she had no trouble articulating her concerns, s*ee* Dkt. No. 88-2 at 14, and she makes no mention of difficulties with expressing herself in writing. McClelland prioritized her desire to shower and talk on the telephone, but her choice to spend her time on these activities rather than preparing a grievance does not mean the administrative remedies were unavailable to her; it means she forfeited her right to those remedies because she preferred to spend her time on other activities. *See Kaba*, 458 F.3d at 684 ("[W]hen the prisoner causes the unavailability of the grievance process by simply not filing a grievance in a timely manner, the process is not unavailable but rather forfeited.").

**3. McClelland's Assertion that the Administrative Remedies Were Unavailable Because She Feared Officers Would Retaliate Is Without Merit.**

Finally, McClelland asserts that the administrative remedies were unavailable to her because she was afraid that officers would retaliate against her if she filed a grievance. "When an inmate claims that the grievance process is unavailable because he fears reprisal, he must demonstrate that a person of 'ordinary firmness' would have been deterred from filing a grievance

7

in the circumstances alleged." *Ebmeyer v. Brock*, 11 F.4th 537, 543 (7th Cir. 2021) (citations omitted). McClelland fails to make such a demonstration. She asserts that Defendants called her cruel names because of the crime for which she was eventually convicted, but the grievance procedures did not require that she submit her grievance to these officers, and she merely speculates that they would have found out if she filed a grievance.

McClelland also does not explain why Defendants would have retaliated against her in response to grievances that were not about their alleged misconduct but focused on the cleanliness of her cell or the lack of access to religious materials. Moreover, McClelland does not assert that any Defendant ever interacted with her about filing grievances—she presents no evidence that Defendants told her she could not file a grievance or that they denied her forms or that they threatened her with harm if she filed a grievance. And her assertions are inconsistent with her later conduct; McClelland offers no explanation of why she felt comfortable filing grievances after she transferred to Pod 4A, just not about the issues in this case. In short, McClelland's argument fails because the record shows that "under the objective standard, no person of ordinary firmness would have been dissuaded from filing a grievance" in the circumstances McClelland describes. *Id.*

**4. McClelland Did Not Exhaust the Available Administrative Remedies in Connection with Her Claims that She Was Confined in Objectively Unreasonable Conditions of Confinement or that She Was Denied the Right to Freely Exercise Her Religion.**

McClelland conceded during her deposition that she did not file grievances about the conditions of her SNU cells, Dkt. No. 91-7 at 23:1-10, about being denied access to a Bible and other religious materials, *Id.* at 31:17-22, about officers calling her names, *Id.* at 97:24-98:1, about food on the walls of her Pod 4A cell, *Id.* at 114:23-25, or about being denied access to eating utensils while she was in the SNU, *Id.* 118:21-23. Further, McClelland presents no evidence that she filed grievances about being housed in the SNU despite having no mental health issues and/or

in Pod 4A despite having no disciplinary issues, about not being allowed to order canteen items while in the SNU, or about the amount of recreation time she was allowed while in the SNU. Given that the record shows that the administrative remedies were available to McClelland, the Court concludes that McClelland failed to exhaust the administrative remedies in connection with these conditions of her confinement and in connection with her claim that she was prevented from feely exercising her religion.

Further, Defendants provide copies of the few grievances McClelland filed after she was transferred to Pod 4A.[1]  Dkt. No. 88-2.  In the first, filed on August 22, 2016, McClelland complains that she had not been able to order canteen items in the week since she transferred from the SNU.  *Id.* at 2.  A response from Aramark on September 8, 2016, confirmed that McClelland's orders had been received and processed.  *Id.* at 4.  McClelland's second, third, and fourth grievances, filed on August 28, August 30, and September 2, 2016, concerned deductions from her trust account for dental services that she did receive.  *Id.* at 6.  Her fifth and final grievance, filed on February 14, 2017, concerned her occasionally not getting her full time out of her cell for recreation.  *Id.* at 14.  A lieutenant responded on February 16, 2017, stating, "No inmate is allowed out for day room time more than an 1 hour [sic].  Your time is allotted due to what is going on in the facility."  *Id.* at 13.

Defendants assert that McClelland failed to appeal any of the decisions on these grievances, so they argue that she failed to exhaust the available administrative remedies on these issues. McClelland asserts that the administrative remedies were unavailable to her because she never

---

[1] Defendants assert that the jail saved copies of *all* the grievances that McClelland submitted.  At her deposition, McClelland testified that she also filed grievances about not having access to eating utensils, writing materials, and cleaning supplies while housed in Pod 4A, *see* Dkt. No. 91-7 at 26:1-7, 54:12-25, 55:1-9, 25:7-12, but she provides no details supporting these assertions (either at her deposition or in an affidavit or declaration), such as when she filed the grievances, the contents of the grievances, how she submitted the grievances, or whether she followed up after receiving no response.  McClelland's unsupported assertion that she filed other grievances not contained in her jail file are insufficient at summary judgment to create a question of fact on this issue.  *See Posey*, 702 F.2d at 105.

received the decisions. She argues that she could not appeal a decision that she never received. Even assuming the administrative remedies were unavailable on these issues, Defendants are entitled to summary judgment on the merits. *See Fluker v. County Kankakee*, 741 F.3d 787, 792 (7th Cir. 2013) (acknowledging that nothing "prohibits a district court's progression from the PLRA defense to the merits if the situation properly calls for it").

Improper deductions from McClelland's account are not relevant to McClelland's claims and McClelland did not raise the issue of limited recreation time in her Third Amended Complaint, *see* Dkt. No. 52 at ¶¶53-57, leaving only her grievance that she was prevented from ordering canteen on Pod 4A for about a week. This condition, which was little more than inconvenience, is not so objectively unreasonable that it violates the Constitution. *See Hardeman v. Curran*, 933 F.3d 816, 823-24 (7th Cir. 2019) (acknowledging that some inconvenience in jail is to be expected). Moreover, McClelland presents no evidence that any of the Defendants were responsible for the delayed delivery of the canteen items. *See Williams v. Shah*, 927 F.3d 476, 482 (7th Cir. 2019) ("A defendant is liable for damages under § 1983 only if she was personally responsible for the deprivation of a constitutional right, meaning that the deprivation occurred at the defendant's behest or with her knowledge and consent.").

In summary, Defendants are entitled to summary judgment because McClelland failed to exhaust the administrative remedies on her First Amendment claim and on most of the conditions giving rise to her Fourteenth Amendment claim. On the remaining condition, for which the administrative remedies were arguably unavailable, Defendants are entitled to summary judgment on the merits.

# CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' motion for summary judgment (Dkt. No. 71) is **GRANTED** and this case is **DISMISSED**. Those claims that Plaintiff failed to exhaust are dismissed without prejudice, and the remaining claim is dismissed with prejudice. The Clerk of Court will enter judgment accordingly.

The Court again sincerely thanks Briane Pagel for volunteering to serve as pro bono counsel. He is relieved of any further obligation in this action.

Dated at Milwaukee, Wisconsin on October 12, 2022.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

---

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.